## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| Net Direct Merchants, LLC | ) | |
| Plaintiff, | ) | |
| | ) | Court No.  1:20-cv-00279 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| OFFICE OF THE UNITED STATES TRADE | ) | |
| REPRESENTATIVE; ROBERT E. | ) | |
| LIGHTHIZER; U.S. CUSTOMS & BORDER | ) | |
| PROTECTION, MARC. A. MORGAN, | ) | |
| U.S. CUSTOMS & BORDER PROTECTION | ) | |
| ACTING COMMISSIONER | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | | |

## **COMPLAINT**

Plaintiff, Net Direct Merchants, LLC, by and through their attorney, allege and state as follows:

1.      This action concerns the imposition of tariffs in connection with an investigation initiated under Section 301(b) of the Trade Act of 1974 by the Office of the U.S. Trade Representative (USTR) (the "investigation") on August 18, 2017, into certain acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation.   *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

2.      The products subject to this Complaint are included in USTR's Lists 3 and 4A.

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21,

2018) and *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304

(Aug. 20, 2019).  https://ustr.gov/issue-areas/enforcement/section-301-investigations/tariff-

actions.

3.      USTR conducted an investigation into China's unfair intellectual property

policies and practices pursuant to Section 301 of the Trade Act (19 U.S.C. § 2411). Section 304

of the Trade Act (19 U.S.C. § 2414) required USTR to determine what action to take, if any,

within 12 months after initiation of that investigation. But USTR failed to issue List 3 (or

subsequent List 4) within that window. USTR may not fall back on its "modification" authority

under Section 307 of the Trade Act (19 U.S.C. § 2417) as a basis for Lists 3 and 4A. Section 307

of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from

China for reasons unrelated to the unfair intellectual property policies and practices it originally

investigated under Section 301 of the Trade Act. Yet that is exactly what Defendants did here

when they promulgated the Lists 3 and 4A duties in response to China's retaliatory duties and

other unrelated issues. And even if USTR deems the existing tariffs "no longer appropriate," as it

also did here, the Trade Act permits USTR only to delay, taper, or terminate—not ratchet up—

the actions it has already taken.

4.      The arbitrary manner in which Defendants implemented the Lists 3 and 4A tariff

action also violates the Administrative Procedure Act ("APA"). USTR (1) failed to provide

sufficient opportunity for comment, e.g., requiring interested parties to submit affirmative and

rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision, e.g., undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made. USTR said absolutely nothing about how those comments shaped its final promulgation of List 3. USTR's preordained decision-making bears no resemblance to the standards that the APA requirements.

5.     The Court should set aside Defendants' actions as ultra vires and otherwise contrary to law, as well as order Defendants to refund (with interest) any duties paid by Plaintiff pursuant to Lists 3 or 4A.

## JURISDICTION

6.     The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

Plaintiff, Net Direct Merchants LLC, is a privately owned ecommerce retailer and distributor of electric fireplaces and fireplace mantels. Net Direct Merchants, LLC sells direct to consumer through its websites (electricfireplacesdirect.com, electricfireplacescanada.ca and mantelsdirect.com) and is a preferred distributor on various marketplaces including Amazon. Founded in 2002, Net Direct Merchants, LLC employs 41 individuals in the United States and generates greater than 35 million in revenue annually. Net Direct Merchants, LLC has made numerous entries of electric

fireplaces, fireplace mantels and heaters classified under HTSUS subheadings

8516.29.0090 and 9403.60.8081, which is subject to the additional ad valorem duties

under List 3. A limited type of fireplaces did receive exclusions, which were extended

until December 31, 2020.  However, much of what Net Direct Merchants imports from

China remains subject to List 3 duties.


7.     Defendant United States of America received or will receive the disputed tariffs

and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

8.     The Office of the USTR is an executive agency of the United States charged with

investigating a foreign country's trade practices under Section 301 of the Trade Act of 1974 and

implementing "appropriate" responses, subject to the direction of the President. USTR conducted

the Section 301 investigation at issue and made numerous decisions regarding List 3.

9.     Ambassador Robert Lighthizer currently holds the position of USTR and serves

as the head of the Office of the USTR. In these capacities, he made numerous decisions

regarding List 3.

10.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects

duties on imports. CBP collected payments made by Plaintiff for the tariffs imposed by USTR

under List 3.

11.     Defendant Mark A. Morgan is the Acting Commissioner of CBP. In this capacity,

he oversees CBP's collection of duties paid or to be paid by Plaintiff under List 3.

## **STANDING**

12.     Plaintiff, Net Direct Merchants LLC , have standing to sue because it is

"adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. §

702; see 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has

jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved

by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants

pursuant to Lists 3 and 4A adversely affected and aggrieved Net Direct Merchants LLC because

it is required to pay these unlawful duties.

## TIMELINESS OF THE ACTION

13.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within

two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

14.     The instant action contests action taken by Defendants that resulted in List 3.

Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to

Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 47,974 (Sept. 21,

2018). Plaintiff claims accrued at the earliest on September 21, 2018, when USTR published

notice of List 3 in the Federal Register. Id. Plaintiff have therefore timely filed this action.

## RELEVANT LAW

15.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's

trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or

discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on

imports from the country that administered the unfair practice. Id. § 2411(b), (c)(1)(B).

16.     Section 304 of the Trade Act requires USTR to determine what action to take, if

any, within 12 months after the initiation of the underlying investigation. Id. § 2414(a)(1)(B),

(2)(B).

17.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or

terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or

restriction on United States commerce" imposed by the investigated foreign country's practice

has "increased or decreased" or when the action "is no longer appropriate." Id. § 2417(a)(1)(B),

(C).

## HIGHLIGHTS OF THE PROCEDURAL HISTORY

### USTR's Investigation

18.     On August 14, 2017, President Trump directed Ambassador Lighthizer to

consider initiating an investigation pursuant to Section 301(b) of the Trade Act concerning

China's laws, policies, practices, and actions related to intellectual property, innovation, and

technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual

Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017). According to the

President, certain Chinese "laws, policies, practices, and actions" on intellectual property,

innovation, and technology "may inhibit United States exports, deprive United States citizens of

fair remuneration for their innovations, divert American jobs to workers in China, contribute to

our trade deficit with China, and otherwise undermine American manufacturing, services, and

innovation." *Id.*

19.     Four days later, on August 18, 2017, USTR formally initiated an investigation

into "whether acts, policies, and practices of the Government of China related to technology

transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade

Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:

China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and

Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

20.     Seven months later, on March 22, 2018, USTR released a report announcing the

results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,

*Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974*

(Mar. 22, 2018), available at https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.

USTR found that certain "acts, policies, and practices of the Chinese government related to

technology transfer, intellectual property, and innovation are unreasonable or discriminatory and

burden or restrict U.S. commerce." *Id*. at 17. USTR based its findings on (1) China's use of

foreign ownership restrictions, foreign investment restrictions, and administrative licensing and

approval processes to pressure technology transfers from U.S. to Chinese companies, id. at 45;

(2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies

on terms that favor Chinese recipients, id. at 48; (3) China's facilitation of systematic investment

in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and

intellectual property for purposes of large-scale technology transfer, id. at 147; and (4) China's

cyber intrusions into U.S. computer networks to gain access to valuable business information, id.

at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce

by the investigated practices.

21.     On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency

team of subject matter experts and economists estimates that China's policies result in harm to

the U.S. economy of at least $50 billion per year." OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), available at

https://ustr.gov/aboutus/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-

sheet. USTR also indicated that, consistent with a directive from President Trump, it would

"propose additional tariffs" of 25% ad valorem "on certain products of China, with an annual

trade value commensurate with the harm caused to the U.S. economy resulting from China's

unfair policies." Id.; see *Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

**Lists 1 and 2**

22.     Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, see 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China covered by Lists 1 and 2.

23.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id*. at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301- action-ustr.

24.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% ad valorem, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

25.     At the same time that it finalized List 1, USTR announced that it intended to impose a 25% ad valorem duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. Id. at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id*. at 28,711-12.

26.     On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% ad valorem in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

**List 3**

27.     As soon as USTR announced the results of its investigation in March 2018, Defendants vastly expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion—ten times the amount it had deemed "commensurate" with the findings of USTR's original investigation. Defendants did so for reasons totally unrelated to the unfair practices that USTR had investigated.

28.     Shortly after President Trump directed USTR in April 2018 to consider imposing duties on $50 billion in Chinese products, China promptly threatened to impose retaliatory duties on the same value of imports from the United States. In response, President Trump "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation." THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), available at https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

29.     When USTR finalized List 1 in mid-June 2018, President Trump warned China that he would consider imposing additional tariffs on Chinese goods if China retaliated against the United States.

30.     Following through on his warning, on June 18, 2018, President Trump formally directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion even though USTR had not yet implemented List 1 and List 2. President Trump acknowledged that China's threatened retaliatory "tariffs on $50 billion worth of United States exports" motivated his decision. THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), available at https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/ ("This latest action by China clearly indicates its determination to keep the United States at a permanent and unfair disadvantage, which is reflected in our massive $376 billion trade imbalance in goods. This is unacceptable.").

31.     Acknowledging the purpose of the President's directive, USTR stated that it would design the newly proposed duties to address China's threatened retaliatory measures,

rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE

UNITED STATES TRADE REPRESENTATIVE, USTR *Robert Lighthizer Statement on the*

*President's Additional China Trade Action* (June 18, 2018), available at https://ustr.gov/about-

us/policy-offices/press-office/press- releases/2018/june/ustr-robert-lighthizer-statement-0

(explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology

transfer and intellectual property theft by the Chinese" identified in the Section 301

investigation, the proposed duties for a third list of products were necessary to respond to the

retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers,

ranchers, and businesses").

32.     Despite these warnings from Defendants, China retaliated by imposing 25% ad

valorem tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16

billion on the same dates the United States began collecting its own 25% tariffs under List 1

(July 6, 2018) and List 2 (August 23, 2018).

33.     About a week after China imposed its first round of retaliatory duties, USTR

published notice of its proposal to "modify the action in this investigation by maintaining the

original $34 billion action and the proposed $16 billion action, and by taking a further,

supplemental action" in the form of "an additional 10 percent ad valorem duty on [a list of]

products [from] China with an annual trade value of approximately $200 billion." *Request for

Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade

Act, pursuant to which USTR "may modify or terminate any action, subject to the specific

direction, if any, of the President with respect to such action, . . . if . . . such action is being taken

under [Section 301(b)] of this title and is no longer appropriate." *Id*. at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)). USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. Id. at 33,608.

34.    In its notice, USTR confirmed that it had relied on China's decision to impose "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id*.; *see also id*. (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated. *See id*.

35.    USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory duties motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/aboutus/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

36.     That same day, President Trump suggested that the United States' trade imbalance with China supported the decision. @realDonaldTrump, TWITTER (July 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209. Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations. *See, e.g.,* @realDonaldTrump, Twitter (July 20, 2018, 8:43 AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; @realDonaldTrump, TWITTER (July 20, 2018, 8:51 AM EDT), https://twitter.com/realDonald Trump/status/1020290163933630464; @realDonaldTrump, TWITTER (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074 252999225344.

37.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% ad valorem. Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/state ment-us-trade-representative.

38.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to

25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018). USTR also set new dates for a public hearing over six days ending on August 27, 2018. *See id.; see also* OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policyoffices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

39.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both initial and rebuttal comments from the public. 83 Fed. Reg. at 38,761. That adjustment, deviating from its past practices, prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties. USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001. Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. *Id*.

40.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018).  Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motived his decision, and he immediately promised to

proceed with "phase three" of the plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id.*

41.     Following the President's announcement, USTR published notice of the final list of products subject to an additional duty, a list commonly known as "List 3." 83 Fed. Reg. at 47,974. USTR imposed a 10% ad valorem tariff that was set to rise automatically to 25% on January 1, 2019. Id. USTR determined that the List 3 duties would apply to all listed products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses. *Id.*

42.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." Id. (brackets omitted). USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.* at 47,975.

43.      In the following months, China and the United States tried to resolve their

escalating trade war through trade negotiations.  Based on the progress made with China in those

negotiations, the Trump Administration announced in December 2018, and again in February

2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%. *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of*

*Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

44.      Apparently, these trade negotiations did succeed.  In May 2019, USTR announced

its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1,

2019, depending on the day of export. *See Notice of Modification of Section 301 Action: China's*

*Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("List 3 Rate Increase Notice"); *see also*

*Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices Related*

*to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15,

2019). The notice cited China's decision to "retreat from specific commitments agreed to in

earlier rounds" of negotiations as the basis for the increase in the duty rate. List 3 Rate Increase

Notice, 84 Fed. Reg. at 20,459. Unlike with past imposition of new tariffs, USTR did not seek

public comment but rather simply announced that the increase would occur. *Id.*

45.      Recognizing that List 3 would cause substantial harm to U.S. companies and

consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek

exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude*

*Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

84 Fed. Reg. 29,576 (June 24, 2019).  As previously stated, Net Direct Merchants LLC did

receive some limited exclusions which were extended.  However, much of the product is still

subject to List 3 duties.

46.     The duties imposed on products covered by List 3 remain in effect as of the date

of this Complaint, with the exception of the limited number of products for which USTR

extended its originally granted exclusions from the List 3 duties. See, e.g., *Notice of Product*

*Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

<u>**STATEMENT OF CLAIMS**</u>

<u>**COUNT ONE**</u>

<u>**(DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)**</u>

47.     Paragraphs 1 through 46 are incorporated by reference.

48.     The Declaratory Judgment Act authorizes any court of the United States to

"declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

49.     The Trade Act of 1974 does not authorize the actions taken by Defendants that

resulted in List 3.

50.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it

determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory

and burdens or restricts United States commerce, and action by the United States is appropriate."

19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 on any such

determination.

51.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

52.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act. Congress did not authorize USTR to escalate its focused investigatory findings into additional tariffs unrelated to the underlying investigation.

53.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

54.     Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 are ultra vires and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

55.     Paragraphs 1 through 46 are incorporated by reference.

56.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

57.     Defendants exceeded their authority under the Trade Act in promulgating List 3 and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

58.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

59.     Defendants also promulgated List 3 in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3.

***

**<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiff respectfully request that this Court

(1) declare that Defendants' actions resulting in tariffs on products covered by List 3 are unauthorized by, and contrary to, the Trade Act;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 in violation of the APA;

(3) vacate the List 3 rulemaking;

(4) order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3;

(5) permanently enjoin Defendants from applying List 3 against Plaintiff and collecting any duties from Plaintiff pursuant to List 3;

(6)  award Plaintiff their costs and reasonable attorney fees; and

(7) grant such other and further relief as may be just and proper.

Respectfully submitted,

 

_____

Evelyn M. Suarez
THE SUAREZ FIRM PLLC
5523 Sherier Pl., NW
Washington, D.C. 20017
202-552-0310
esuarez@suarezfirm.com

September 17, 2020

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on September 17, 2020, copies of Plaintiff Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

_____
Evelyn M. Suarez
THE SUAREZ FIRM PLLC
5523 Sherier Pl., NW
Washington, D.C. 20017
202-552-0310
esuarez@suarezfirm.com